**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 3:19-cv-00704-L |
| ANDRE WEILLIAMS and BH LOUNGE | § | |
| OF DESOTO LLC | § | |
| | § | |
| Defendants | § | |

**ANSWER & AFFIRMATIVE DEFENSES**

ANDRE WILLIAMS and BH LOUNGE OF DESOTO LLC answer the Complaint (Doc. 1) and

assert the following Affirmative Defenses.

**ANSWER**

**JURISDICTION AND VENUE**

1.   This is a civil action seeking damages for violation of 47 U.S.C. §§ 553 or 605, et seq. (The

"Telecommunications Act") and for copyright infringement under the copyright laws of the U.S. (17

U.S.C. §101, et seq.).

**Answer: Defendants admit this action involves the foregoing statutes, but deny any**

**wrongdoing.**

2.   This Court has jurisdiction under 17 U.S.C. §101, et seq. and 28 U.S.C. Section §1331,

which states that the district courts shall have original jurisdiction of all civil actions arising under

the Constitution, laws, or treaties of the United States; and 28 U.S.C. Section §1338(a) (copyright).

**Answer: Defendants admit jurisdiction, but deny any wrongdoing.**

3.   Upon information and belief, venue is proper in this court because, <u>inter alia,</u> a

substantial part of the events or omissions giving rise to the claim occurred within Dallas County,

which is within the Northern District of Texas (28 U.S.C. § 1391(b) and 28 U.S.C. §124(a)(1)).

1

**Answer: Due to lack of sufficient information or knowledge, Defendants are unable to admit or deny this allegation. Therefore, they deny the same.**

4. This Court has personal jurisdiction over the parties in this action. Defendants to this action had or has an agent or agents who has or have independently transacted business in the State of Texas and certain activities of Defendants giving rise to this action took place in the State of Texas; more particularly, Defendants acts of violating federal laws and the proprietary rights of Plaintiff, as distributor of the satellite programming transmission signals took place within the State of Texas. Moreover, upon information and belief, Defendants have their principal place of business within the State of Texas; thus, this Court has personal jurisdiction over Defendants.

**Answer: Defendants admit they currently transact business in the State of Texas. Defendants deny any wrongdoing and specifically deny being the individual or entity in control of the venue purportedly displaying the complained of program.**

## PARTIES

5. The Plaintiff is a Pennsylvania Corporation with its principal place of business located at 407 East Pennsylvania Boulevard, Feasterville, Pennsylvania 19053.

**Answer: Due to lack of sufficient information or knowledge, Defendants are unable to admit or deny this allegation. Therefore, they deny the same.**

6. By contract, Plaintiff was granted the exclusive rights of distribution and public performance as to commercial establishments for the Mayweather vs. McGregor Match, including all undercard matches and the entire television Broadcast, scheduled for August 26, 2017, via closed circuit television, encrypted "IPTV", cable or via encrypted satellite signal (hereinafter referred to as the "Broadcast").

**Answer: Due to lack of sufficient information or knowledge, Defendants are unable to admit or deny this allegation. However, upon information and belief, other commercial entities**

2

**were provided rights to display and publicly perform the complained of program. Therefore, they deny the same.**

7.  Upon information and belief the Defendant, ANDRE WILLIAMS, resides at 903 Ragland Drive, Cedar Hill, TX 75104.

**Answer: Admit.**

8.  Upon information and belief the Defendant, ANDRE WILLIAMS, was an officer, director, shareholder, principal, manager and/or member of BH LOUNGE OF DESOTO LLC, d/b/a BH LOUNGE OF DESOTO a/k/a BRICKHOUSE LOUNGE RESTAURANT & BAR, and is doing business as BH LOUNGE OF DESOTO A/K/A BRICKHOUSE LOUNGE RESTAURANT & BAR located at 2021 N. Hampton, Suite 100, Desoto, TX 75115 (hereinafter referred to as the "Establishment").

**Answer: Defendants admit Andre Williams was a member of BH LOUNGE OF DESOTO, LLC at the time of the complained of fight. Defendants deny that BH LOUNGE OF DESOTO, LLC was transacting any business at the time the complained of fight was purportedly broadcast at any address, let alone the address provided.**

9.  Upon information and belief the Defendant, ANDRE WILLIAMS, was the individual with supervisory capacity and control over the activities occurring within the Establishment on August 26, 2017.

**Answer: Denied.**

10.  Upon information and belief, Defendants, ANDRE WILLIAMS and BH LOUNGE OF DESOTO LLC, charged a cover charge of $15.00 per person for each patron entering the commercial establishment known as BH LOUNGE OF DESOTO A/K/A BRICKHOUSE LOUNGE RESTAURANT & BAR.

**Answer: Denied.**

11. Upon information and belief the Defendants, ANDRE WILLIAMS and BH LOUNGE OF DESOTO LLC, received a financial benefit from the operations of BH LOUNGE OF DESOTO LLC, d/b/a BH LOUNGE OF DESOTO a/k/a BRICKHOUSE LOUNGE RESTAURANT & BAR, on August 26, 2017.

**Answer: Defendants admit Andre Williams was a member of BH LOUNGE OF DESOTO, LLC at the time of the complained of fight. Defendants deny that BH LOUNGE OF DESOTO, LLC was transacting any business at the time the complained of fight was purportedly broadcast and, therefore, could not receive any financial benefit.**

12. Upon information and belief, Defendant, ANDRE WILLIAMS, was the individual with close control over the internal operating procedures and employment practices of BH LOUNGE OF DESOTO a/k/a BRICKHOUSE LOUNGE RESTAURANT & BAR on August 26, 2017.

**Answer: Defendants admit Andre Williams was a member of BH LOUNGE OF DESOTO, LLC at the time of the complained of fight. Defendants deny that BH LOUNGE OF DESOTO, LLC was transacting any business at the time the complained of fight was purportedly broadcast and, therefore, there were no internal operating procedures or employment practices.**

13. Upon information and belief, Defendant, ANDRE WILLIAMS, was present at the Establishment during the exhibition of the Broadcast on August 26, 2017.

**Answer: Denied.**

14. Upon information and belief, Defendants, ANDRE WILLIAMS and BH LOUNGE OF DESOTO LLC, authorized the exhibition of the Broadcast at the Establishment on August 26, 2017.

**Answer: Denied.**

15. Upon information and belief, Defendants, ANDRE WILLIAMS and BH LOUNGE OF DESOTO LLC, received a commercial benefit by charging a $15.00 cover charge to their patrons for entrance to the Defendants establishment and by not paying the commercial licensing fee to the Plaintiff for the Broadcast and obtaining same through alternative means.

**Answer: Denied.**

16. Upon information and belief, Defendants, *jointly and severally,* advertised on social media, including but not limited to the Instagram account, for the exhibition of Plaintiff's Broadcast within the commercial establishment known as BH LOUNGE OF DESOTO a/k/a BRICKHOUSE LOUNGE RESTAURANT & BAR. Please see Exhibit A attached hereto.

**Answer: Denied.**

17. Upon information and belief, the Establishment known as BH LOUNGE OF DESOTO a/k/a BRICKHOUSE LOUNGE RESTAURANT & BAR had an estimated fire code occupancy of 101-200 people on August 26, 2017.

**Answer: Due to lack of sufficient information or knowledge, Defendants are unable to admit or deny this allegation.**

18. Upon information and belief, the Defendant, BH LOUNGE OF DESOTO LLC, d/b/a BH LOUNGE OF DESOTO a/k/a BRICKHOUSE LOUNGE RESTAURANT & BAR, is a business entity, the exact nature of which is unknown, having its principal place of business at 2021 N. Hampton, Suite 100, Desoto, TX 75115.

**Answer: Defendants admit BH LOUNGE OF DESOTO LLC is a business entity and *currently* transacts business at the provided address. Defendants deny it transacted business at the time of the complained of program.**

19. Upon information and belief, the Defendant, BH LOUNGE OF DESOTO LLC, is a limited liability company that was formed and is licensed to do business in the State of Texas.

5

**Answer: Defendants admit BH LOUNGE OF DESOTO LLC is a business entity and** *currently* **transacts business at the provided address. Defendants deny it transacted or was licensed to do business at the time of the complained of program.**

20.    The Registered Agent for BH LOUNGE OF DESOTO LLC is ANDRE TERRELL WILLIAMS located at 713 Chalk Hill Lane, De Soto, TX 75115.

**Answer: Denied.**

**C<small>OUNT</small> I**

21.    Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs "1" through "20," inclusive, as though set forth herein at length.

**Answer: Defendants reassert their responses to the foregoing paragraphs as if fully set forth here.**

22.    Plaintiff's Broadcast originated via satellite uplink and was subsequently re- transmitted to cable systems and satellite companies via satellite signal.

**Answer: Due to lack of sufficient information or knowledge, Defendants are unable to admit or deny this allegation.**

23.    Plaintiff, for a licensing fee, entered into licensing agreements with various entities in the State of Texas, allowing them to publicly exhibit the Broadcast to their patrons. Upon payment of the appropriate fees, Plaintiff authorizes and allows customers to de-crypt, unscramble and receive the closed circuit, "IPTV", cable or satellite Broadcast.

**Answer: While Defendants believe that the program could be viewed by closed circuit television, broadcast through the internet, broadcast through cable signals, or broadcast through satellite signals, due to lack of sufficient information or knowledge, Defendants are unable to admit or deny the specific allegations set forth here.**

24.    The Broadcast was also available for non-commercial, private viewing through Plaintiff

6

or its authorized online platforms for residential Pay-Per-View purchase and consumption via the internet. Owners of commercial establishments wishing to avoid paying Plaintiff's licensing fees can surreptitiously gain access to Plaintiff's broadcasts by purchasing the programming online, without proper authorization, at residential rates, which are greatly discounted compared to the rates required for commercial entities and exhibit those broadcasts for their own commercial benefit and gain.

**Answer: While Defendants believe the program can be received through the internet or other means that do not require descrambling or decrypting satellite or cable signals, due to lack of sufficient information or knowledge, Defendants are unable to admit or deny the specific allegations set forth here.**

25.   In order for anyone to obtain the Broadcast through a website intended for private, non-commercial viewing, an individual purchaser would be provided with terms of service which specifically provide for **non-commercial, personal use only.**

**Answer: While Defendants believe the program can be received through the internet or other means that do not require descrambling or decrypting satellite or cable signals, due to lack of sufficient information or knowledge, Defendants are unable to admit or deny the specific allegations set forth here.**

26.   Upon information and belief, with full knowledge that the Broadcast was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agents, servants, workmen or employees, without paying Plaintiff a fee or entering into an agreement with Plaintiff, unlawfully intercepted, received and/or de-scrambled Plaintiff's Broadcast and did exhibit the Broadcast at BH LOUNGE OF DESOTO A/K/A BRICKHOUSE LOUNGE RESTAURANT & BAR located at 2021 N. Hampton, Suite 100, Desoto, TX 75115 at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain.

**Answer: Denied.**

27.   Upon information and belief, Plaintiff alleges that Defendants effected unauthorized interception and receipt of Plaintiff's Broadcast by ordering programming for residential use and subsequently displaying the programming at the commercial establishment known as BH LOUNGE OF DESOTO A/K/A BRICKHOUSE LOUNGE RESTAURANT & BAR for commercial gain without authorization, or by such other means which are unknown to Plaintiffs and known only to Defendants.

**Answer: Denied.**

28.   Upon information and belief, Defendants and/or their agents, servants, workmen and/or employees intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's Broadcast, which originated via satellite uplink and then re-transmitted via satellite or microwave signal to various cable and satellite systems. There are multiple illegal and unauthorized methods of accessing the Broadcast, including but not limited to the traditional ways of pirating a broadcast (1) splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment, de- crypt, unscramble and receive the closed circuit, "IPTV", cable or satellite Broadcast; (2) commercially misusing cable or satellite by registering same as a residence when it is, in fact, a business; or (3) taking a lawfully obtained box or satellite receiver from a private residence, into a business. Recently emerging over-the-top "OTT" technologies, used for the delivery of film and TV content via the internet, such as (1) Broadband or internet broadcast; and/or (2) Live Social Media Streaming ("Nano-Piracy") are additional methods in which pirated material can be obtained without requiring users to subscribe to a traditional cable or satellite pay-tv service such as Comcast, DIRECTV or Time Warner Cable and are readily available to anyone with a Smartphone. The misuse of OTT technology can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world. Each of the above described methods would allow

8

Defendants to access the Broadcast unlawfully and without Plaintiffs authorization. Prior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendants obtained the Broadcast. However, it is logical to conclude that Defendants utilized one of the above described methods or another to intercept and exhibit the Broadcast without entering into an agreement to obtain it lawfully from Plaintiff, the legal rights holder for commercial exhibition.

**Answer: While Defendants believe the program can be received through the internet or other means that do not require descrambling or decrypting satellite or cable signals, due to lack of sufficient information or knowledge, Defendants are unable to admit or deny the specific allegations set forth here other than to deny they displayed or publicly performed the complained of program in any fashion.**

29. 47 U.S.C. §605 (a) prohibits the unauthorized reception and publication or use of communications such as the transmission for which plaintiff had the distribution and public performance rights thereto.

**Answer: This allegation is a legal conclusion to which no response is required. Insofar a response is required, the allegation is denied.**

30. By reason of the aforementioned conduct, the aforementioned Defendants willfully violated 47 U.S.C. §605 (a).

**Answer: Denied.**

31. By reason of the aforementioned Defendants' violation of 47 U.S.C. §605 (a), Plaintiff has a private right of action pursuant to 47 U.S.C. §605.

**Answer: Denied.**

32. As a result of the aforementioned Defendants' willful violation of 47 U.S.C. §605 (a), Plaintiff is entitled to damages, in the discretion of this Court, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii) of up to the maximum amount of $110,000.00 as to each Defendant.

**Answer: Denied.**

33.  Pursuant to 47 U.S.C. §605, Plaintiff is also entitled to an award of full costs, interest and reasonable attorney's fees.

**Answer: Denied.**

### COUNT II

34.  Plaintiff hereby incorporates paragraphs "1" through "20" and "22" through "29," inclusive, as though fully set forth herein.

**Answer: Defendants reassert their responses to the foregoing paragraphs as if fully set forth here.**

35.  Upon information and belief, with full knowledge that the Broadcast was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agents, servants, workmen or employees did exhibit the Broadcast at the above-captioned address at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain.

**Answer: Denied.**

36.  47 U.S.C. §553 prohibits the unauthorized reception, interception and exhibition of any communications service offered over a cable system such as the transmission for which Plaintiff had the distribution and public performance rights as to commercial establishments thereto.

**Answer: This allegation is a legal conclusion to which no response is required. Insofar a response is required, the allegation is denied.**

37.  Upon information and belief, the Defendants individually, willfully and illegally intercepted said Broadcast when it was distributed and shown by cable television systems.

**Answer: Denied.**

38.  By reason of the aforementioned conduct, all of the aforementioned Defendants

willfully violated 47 U.S.C. §553, thereby giving rise to a private right of action.

**Answer: Denied.**

39.    As a result of the aforementioned Defendants' willful violation of 47 U.S.C. §553, Plaintiff is entitled to damages, in an amount in the discretion of this Court, of up to the maximum amount of $60,000.00, plus the recovery of full costs, interest and reasonable attorney's fees.

**Answer: Denied.**

<u>COUNT III</u>

40.    Plaintiff hereby incorporates paragraphs "1" through "20" and "22" through "28" and "35," inclusive, as though fully set forth herein.

**Answer: Defendants reassert their responses to the foregoing paragraphs as if fully set forth here.**

41.    Plaintiff is the copyright owner of the exclusive rights of distribution and public performance as to commercial establishments to the Broadcast, including all undercard matches and the entire television Broadcast, scheduled for August 26, 2017, via closed circuit television and via encrypted satellite signal. The Certificate of Copyright registration has been issued by the U.S. Copyright Office. See U.S. Certificate of Copyright Registration No. PA 2-066-333. The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal.

**Answer: Upon information and belief, based in part on Showtime's suits claiming ownership of the copyright in the complained of programs[1] and third-parties' commercial exhibition of the complained of program,[2] Plaintiff lacks "exclusive rights of distribution and public**

---

[1] *See* Brachmann, S., *Showtime files copyright suit against Mayweather-McGregor livestreaming sites*, IP Watchdog.com (Aug. 25, 2017), available at https://www.ipwatchdog.com/2017/08/25/showtime-files-copyright-suit-mayweather-mcgregor-livestreaming-sites/id=87337/

[2] *See In Theaters Aug 26 Mayweather vs. McGregor*, Fathom Events, *available at* https://www.fathomevents.com/events/mayweather-vs-mcgregor

**performance as to commercial establishments. Otherwise, due to lack of sufficient information or knowledge, Defendants are unable to admit or deny the specific allegations set forth here.**

42.    As a copyright holder of the above mentioned rights to the Broadcast, Plaintiff has rights to the Broadcast, including the right of distribution as well as the licensing to commercial establishments for the right to publicly exhibit same.

**Answer: Defendants note the foregoing allegation provides only rights to licensing to commercial establishments by "closed circuit television and satellite signal," but due to lack of sufficient information or knowledge, Defendants are unable to admit or deny the specific allegations set forth here.**

43.    Defendants never obtained the proper authority or license from Plaintiff to publicly exhibit the Mayweather v. McGregor Broadcast on August 26, 2017.

 **Answer: Admitted.**

44.    Upon information and belief, with full knowledge that the Broadcast can only be exhibited within a commercial establishment by the purchasing of a license from Plaintiff, Defendants and/or their agents, servants, workmen or employees illegally intercepted and/or publicly displayed the Broadcast and exhibited same in her commercial establishment on August 26, 2017.

**Answer: Denied.**

45.   Specifically, upon information and belief, the Defendants and/or their agents, servants, workmen and employees unlawfully obtained the Broadcast, enabling Defendants to publicly exhibit the Broadcast without paying the appropriate licensing fee to Plaintiff.

**Answer: Denied.**

46.   By reason of the aforementioned conduct, the Defendants willfully violated 17 U.S.C. §501(a).

**Answer: Denied.**

47.    By reason of the aforementioned Defendant' violation of 17 U.S.C. §501(a), Plaintiff has a private right of action pursuant to 17 U.S.C. §501 (b).

**Answer: This allegation is a legal conclusion to which no response is required. Insofar a response is required, the allegation is denied.**

48.    As a result of Defendants' willful infringement of Plaintiff's copyrights and exclusive rights under copyright by advertising and subsequently displaying Plaintiff's Broadcast, Plaintiff is entitled to damages, in the discretion of this Court, under 17 U.S.C. §504(c)(1) and 504(c)(2), of up to the maximum amount of $150,000.00.

**Answer: Denied.**

49.    Plaintiff is further entitled to its attorney's fees and costs pursuant to 17 U.S.C. §505.

**Answer: Denied.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### Wrong party

1.    While the limited liability Defendant had been formed, it was not doing business at the time of the complained of program.

2.    Defendants notified Plaintiff of this fact, provided a Texas Alcoholic Beverage Commission permit issued *after* the complained of program for the business, provided Plaintiff with a Certificate of Occupancy issued *after* the complained of program for the business, and provided Plaintiff with a City of Desoto Food Service Establishment Operator's permit issued *after* the complained of program for the business.

3.    Upon request, Defendants identified Mr. Charles Bailey and Jonah Investments, LLC as the entities operating the establishment on August 26, 2017.

13

4.     Going further, Defendants noted that Broadcast Music Inc. (commonly known as BMI) had sued Mr. Bailey and Jonah Investments, LLC, but dropped the suit upon his death.

5.     Defendant Williams was not present during the complained of program.

6.     Defendant Williams does not believe any investigator would know his appearance versus Mr. Bailey's appearance.

7.     Plaintiff persists in this action against the wrong party.

8.     Andre Williams did not display the complained of program.

9.     BH LOUNGE OF DESOTO LLC did not display the complained of program.

### Second Affirmative Defense
### "Internet defense"

10.     The Complaint acknowledges that the complained of program can be accessed through the internet.

11.     The Plaintiff ignored this possibility and alleges "upon information and belief" that either cable or satellite piracy occurred.

12.     Display through an internet signal is not cable or satellite piracy.

13.     Defendants did not display the complained of program.

14.     Yet, the Plaintiff attempts to hold Defendants responsible for the acts of a third-party.

15.     In the event Defendants can be held responsible for the acts of a third-party, if that third-party displayed the complained of program through the internet, such actions do not constitute signal piracy.

### Third Affirmative Defense
### Lack of standing

16.     Plaintiff contends that it has the exclusive right to commercially distribute the audiovisual presentation of the complained of program.

17.     Based on prior Joe Hand Promotions licensing agreements obtained by undersigned, there is a likelihood that Plaintiff only owns limited rights to closed-circuit broadcast of the complained of fight.

18.     Fathom Events also had the right to distribute the fight in commercial establishments, namely movie theaters. Fathom Events, *Mayweather vs. McGregor*, available at https://www.fathomevents.com/events/mayweather-vs-mcgregor (last accessed July 22, 2019).

19.     Upon information and belief, others were authorized to distribute the program through the internet. *See, e.g.* Christ, S., *Mayweather vs McGregor to be carried by Sling TV PPV*, SBNation (Aug. 16, 2017), available at https://www.badlefthook.com/2017/8/16/16157912/mayweather-vs-mcgregor-to-be-carried-by-sling-tv-ppv (last accessed July 22, 2019); Hodel, M., *Watch McGregor take on Mayweather on the UFC App on Xbox One*, Microsoft (Aug. 24, 2017), available at https://news.xbox.com/en-us/2017/08/24/mcgregor-mayweather-ufc-app-xbox-one/          (last accessed July 22, 2019).

20.     Based on the foregoing, upon information and belief, Plaintiff does not hold the exclusive rights to commercial distribution it claims.

21.     Based on the foregoing, upon information and belief, Plaintiff does not hold the exclusive rights to distribute through the internet.

22.     Without the aforementioned exclusive rights, Plaintiff lack standing to complain of signal piracy.

23.     Bringing a copyright claim requires a plaintiff to have an assignment or hold exclusive rights to one of the enumerated rights contained in § 106 of the Copyright Act.

24.     Upon information and belief, Plaintiff does not hold sufficient rights to provide standing to assert a copyright claim.

25.    In fact, in Central District of California case number 2:17-cv-6041, *Showtime Networks Inc. v. John Doe, et al.*, Showtime Networks alleged that it "own[ed] and control[ed] the exclusive rights to, among other rights, reproduce and transmit the [complained of program] within the United States. *Id.* Doc. 1, ¶ 13.

26.    While that case mentions other "Licensed Distributors," it does not allege they have any exclusive rights.

27.    Plaintiff claimed it "is the copyright owner of the exclusive rights of distribution and public performance as to commercial establishments to the Broadcast, including all undercard matches and the entire television Broadcast, scheduled for August 26, 2017, via closed circuit television and via encrypted satellite signal."

28.    Records at the Copyright Office show Showtime Networks, Inc. is the owner of the copyright – not Plaintiff. Exhibit A.

29.    Even if it acquired those rights the *Showtime Networks* filing suggests that Showtime Networks, Inc., not the Plaintiff, owns the rights concerning internet streaming.

30.    Similarly, Fathom Events also distributed the complained of program.

31.    Thus, Plaintiff, upon information and belief, cannot own the right to distribute and authorize public performance of the complained of program.

32.    The third-parties who controlled and ran the Establishment at the time of the complained of program may have ordered the complained of program through the internet.

33.    Lacking an assignment or the exclusive right to distribute, the Plaintiff lacks standing to bring its copyright infringement claim.

34.    Lacking rights to internet distribution, Plaintiff may lack standing to bring its other claims.

## Fourth Affirmative Defense
### Failure to State a Cause of Action

35.     The facts set forth by the Plaintiff are insufficient to state a cause of action upon which relief can be granted.

## Fifth Affirmative Defense
### One-satisfaction rule

36.     The one-satisfaction rule operates to prevent double recovery or overcompensation to a plaintiff for a single injury.

37.     Here, the Plaintiff seeks relief under two signal piracy statutes, when their remedies are mutually exclusive.

38.     Plaintiff cannot recover under both statutes.

39.     Further, the harm complained of in the copyright claim stems from the same injury and the same purported rights.

40.     The Copyright Act concerns itself with rights concerning public display.

41.     As a matter of equity, Plaintiff should not be entitled to collect for the same injury under both the Copyright Act and signal piracy statutes.

42.     Plaintiff is not entitled to relief under both of the signal piracy statutes simultaneously.

43.     Plaintiff is not entitled to relief under a signal piracy statute and a copyright statute.

## Seventh Affirmative Defense
### Acquiescence

44.     Upon information and belief, Plaintiff knew that the complained of program was to be displayed by the third-party(ies) controlling and running the Establishment [3]at the time of the complained of program.

---

[3] Defendants use this term as it is used in the Complaint without admitting the proper company or individuals are named as controlling or owning the "Establishment."

45.     Upon information and belief, Plaintiff failed to notify those third-parties they lacked proper authorization to display the program.

46.     Plaintiff did not make any efforts to stop the program from being publicly displayed at the Establishment.

47.     Thus, Plaintiffs claims are barred by the doctrine of acquiescence.

WHEREFORE, ANDRE WILLIAMS and BH LOUNGE DESOTO LLC respectfully request that this Court enter judgment in their favor and against JOE HAND PROMOTIONS, INC., providing as follows:

A.      Plaintiff take nothing from its complaint and its claims be dismissed with prejudice;

B.  Awarding Defendants their costs and reasonable attorneys' fees incurred during this action; and

C.  Any other relief this Court deems just.

### Demand for Jury Trial

Under Federal Rule of Civil Procedure 38, and any other applicable Rule or law, John Doe demands a trial by jury as to any issue triable by a jury.

Respectfully submitted,
ANDRE WILLIAMS and BH LOUNGE DESOTO LLC, by

/s/ Jonathan LA Phillips
Jonathan LA Phillips
Attorney at Law
Post Office Box 6323
Peoria, Illinois 61601-6323
Tel:        (309) 643-9016
Email:      jon@jlaplaw.com
*Pending pro hac vice admission*

18

James Crewse
Crewse Law Firm PLLC
5546 Goodwin Avenue
Dallas, Texas 75026
Tel:         (214) 394-2856
Email:       jcrewse@crewselawfirm.com
*Local counsel*

**Certificate of Service**

Undersigned certifies and states that on July 31, 2019, he caused the foregoing document to be served on all counsel of record through filing with the Court's CM/ECF system. In doing so, he served all counsel of record under Local Rule 5.1(d)

/s/Jonathan LA Phillips

19